Chief Justice Robertson
delivered the Opinion of the Court.
In April, 1819 — Archibald Miller being the administrator of the assets of David Maxwell, who had died in 1819, and the widow of the intestate being the guardian of his only children, four infants — an order, purporting to have been ex officio, and without any motion for that purpose, was made by the County Court of Warren, appointing commissioners to allot to the widow her thirds of the land and slaves: but, at the succeeding May term, after the commissioners had made an allotment, but before it had been reported, the same Court, on the widow’s application, substituted other commissioners, and revoked the authority improperly given to the first; nevertheless, -at its next July term, the same Court received and admitted to record a report by the first commissioners, assigning to the widow one third of the land, and allotting to her, for her third of the slaves, Ned, *80 Rainey, Eliza, Claiborne, Isabella, and ¿Hice; and, also, at its July term, 1821, received, approved, and admitted to record, a report by the last appointed commissioners, allotting to her, for her third of the slaves, an entirely different set of slaves, with the exception of Eliza only, who was included in both allotments.
In April, 1821, the widow had intermarried with one William Smith; and, about the first of July of the same year, during the term at which the last report was received by the County Court, Robert W. Lucas was substituted as the guardian. And, shortly afterwards— Smith and wife still being in possession of all the slaves of the intestate — Lucas filed a bill in chancery against them, for the purpose of enjoining the sale or abduction of any of those to whom he, as guardian, was entitled, and of compelling a surrender of them to himself. But, early in 1822, the bill was dismissed agreed; and, sometime in March afterwards, Smith and wife, still being in possession of Claiborne, Isabella and Alice, sold their claim to a life estate in Claiborne to Archibald Millei’, (who was the administrator,) and surrendered Alice and Isabella to the sheriff, to be sold under a fieri facias then in his hands, and which had been issued on a judgment in favor of Miller as administrator, and against the said Smith and wife; and accordingly their then asserted life estate in these two latter slaves, was sold by the sheriff, and bought by one Lawless, to whom they were delivered, and in the hands of whose representative they still appear to be.
Miller having afterwards sold his interest in Claiborne to Samuel C. Rodes, who had intermarried with one of the distributees, and Claiborne having run away from Rodes, or been run off by him — the other distributees filed a bill in chancery against Rodes and wife, and against Miller, as administrator, and all his sureties, except one Hendrick, averring that the first allotment of slaves was void, and had been so declared by this Court, and that, therefore, Claiborne, Alice and Isabella, belonged to the distributees, and that Miller was liable for their value, and for intermediate hire; and praying for general relief.
To a bill to enforce the liability of an admr’s sureties,the representatives of deceased sureties should be parties with the survivors.
There should be but one suit upon one entire representative liability. A suit ngainst an adm’r fnstituted bpend’ inga suit for a settlement should be dismissed.
Nodes and wife having, in a cross-bill against Miller, prayed for compensation for Claiborne, and Miller having, in his answer to the original bill, alleged, among other things, that, whilst Mrs. Smith was both widow and guardian, he had delivered to her, in her twofold capacity, all the slaves of the intestate — an amended bill was filed against her husband and herself, and her sureties as guardian, claiming a decree against them, on the hypothetical case stated in Miller’s answer. In their answer, Smith and wife, admitting the sales to Miller and Lawless, deny that the slaves now in controversy, or any others, were delivered by Miller to her as guardian; and, seeming to claim under the last allotment, they deny that, at the time of either of the sales, the slaves who were sold were held or claimed under the allotment by the commissioners, and suggesting,as was the fact, that her guardianship had ceased, aver that those slaves were, when they were sold, under the control of Lucas, the then guardian.
Lucas also having made his answer, as one of the sureties of the preceding guardian, a cross-bill against the representative of Lawless, the Circuit Court, upon a final hearing on the original and amended and cross-bills, dismissed the whole of them absolutely. And the original complainants alone prosecute this appeal, to reverse so much of the decree as dismissed their bills.
As to such of Miller’s sureties as were made defendants, there can be no doubt that the Circuit Court ought . ... , , . ... . . ... , D to have dismissed the bill without prejudice, at least; because the burthen, so far as any could have been imposed on his sureties, ought to be distributed among all of them; and therefore the representative of Hendrick, who was one of them, was .a necessary party; but was not made a party; nor is any reason assigned for the omission. And, as to Miller himself, the bill suggests , . . . , . . , „ co that a suit, previously brought against him, lor an account and settlement, was still pending; and it is not i , , , . i . proper that there should be two independent suits for enforcing an entire representative responsibility, or portions of such responsibility. .The whole should be adjusted in one case; and on that groundj if he were liable *82 at all, the bill might have been dismissed as to him,also, without prejudice.
An adm’r cannot te distributees! for the slaves dedow, while she was entitled to some as dower and to the rest as guardian. Nor which a dower interest was sold in his favor, an herhurbandr without he is proceeds the sale, which went tributabl funA Nor for a slave which he obtained abona fide purchase of a life estate erroneously supposed to belong to of which slave one of the afterwards obtained possession: the latter should made accountable.
That an allotment of slaves to a widow as dower, had been annulled by a decision of this court, procuied by her and her husband— being a fact withio their knowledge, must be taken as true, when afterwards alleged in a bill against them,and not answered.
*82 But the record in this case is insufficient, in our opini°n>to show that Miller is equitably liable for the demand asserted in the bill. We feel authorized to infer, from the pleadings and other facts, that he had surrendered all the slaves to Mrs. Maxwell, now Mrs. Smith, . _ _ , ' . , long before the sales m 1822; and that, from the time 0f fogt allotment of dower, she had continued to hold them m her double character oi guardian and widow, ^nd therefore, he should not be deemed responsible, as administrator, for the subsequent use and sale of them by herself .aQd her husband; nor does it even appear that he is personally liable; for, as to the two sold under execution, there is no proof of his agency in that sale, or that he was guilty of any bad faith; and the proceeds of the sa^e having been applied to the augmentation of the distributable fund, the distributees should not, in any . , , . , , , . . event, have a decree against him ior those slaves, without releasing him from liability to themselves, for the , . , , , , amount for which they were sold. And as to the other slave, Claiborne, there is not only no proof of intentional wrong in the purchase of him by Miller, but if there had been, he should not, as we presume, be held responsible in this suit; because one of the distributees afterwards obtained the possession of him, and should account for him, as so much received of the estate, instead of co-operating with his co-distributees in an endeavor to charge the administrator and his sureties with his value. It was proper, therefore, to dismiss the bill absolutely, as to Miller and his sureties.
But it does not seem to us to have been right to dismiss. it absolutely and entirely as to the other defendants.
The record shows that the first allotment was erroneous: (1) because it does not appear to have been made upon the. application of any person who had a right to ask for it; and (2) because the authority of the commissioners had been revoked before they made any report. But whether this allotment was, for either of these reasons, void, we need not determine,' because, as *83 to Smith and wife, at least, the record shows that it was annulled by this Court, at their instance, after they had procured the last allotment; for, though the bill alleges the fact, they failed to respond to that allegation, which must be presumed to have been within their personal knowledge; and therefore it should be deemed to have been admitted by them.
An allotment of slaves to a widow, as dower, by the adm’r, with her concurrence, may be effectual & binding without the intervention of the county court; and a void allotment by the court, may be made effectual by their acquiescence; & where a widow and her husband , in possession under a'first allotment, have sold their right, they .shouldnotbe per mitted to claim under a second allotment, tho’ the first was void.
A widow being guardian of her deceased husba”d’s children, and having received all his slaves of the admmistrator, to hold as widow g¿e and^Sarsureties in her guar^countable* for all, except her life estate in one tJljra. tllt gj,e & her sureties may have been exonerated, by the delivery of all, except one third, to a subsequent guardian; and, as it was the duty of the latter to obtain possession of his ward's slaves, he and his sureties may be liable, with the first guardian and her sureties, or alone; and are necessary parties to a bill by the distributees claiming the slaves or their value.
There is no reason to doubt, that, prior to her intermarriage with Smith, the widow held under the first allotment; which, even if it were void, might have been made effectual by the concurrence of herself and the administrator, who might, by their voluntary agreement, have made a valid and binding allotment without the intervention of the County Court. And if they both approved and acquiesced in the first allotment, it was therefore effectual until renounced or superseded by consent of all parties concerned, or by the authority of law. Whether it was ever revoked effectually, we cannot now decide with certainty'or confidence; because the necessary facts do not clearly appear.
But if Smith and wife held under the first allotment, they should not now be permitted by a court of equity to hold under the last allotment, after having sold a life estate in the slaves embraced in the first. And, in this aspect of the case, the appellants might be entitled to the slaves included in the last allotment of dower.
However, having been, as we now presume the wid- ... . , , ,. r ow was, possessed, m her own right and as guardian, of all the slaves, which of them she held, or ought to have , ... ° held, m her own right, it may not be material ñow to decide or to know; for the administrator would not be 5 liable; and the only question would be, as to the nature and extent of the responsibility of others. She, and her sureties as guardian, would be responsible for all except her life estate in one third of the slaves, unless, by surrender of all, except such third, to Lucas, or by some ,, , , i i • n i t v other arrangement with him, after he became guardian, *84 her sureties have been exonerated. Whether there, was any such exoneration or not, the record would not enable us to decide, even if all proper parties were before us. But as, in any event,, it was the duty of Lucas to get possession of the slaves of his ward, he and his sureties maybe responsible, jointly with the first guardian and her sureties, if they never were exonerated, or alone, if there ever was such a discharge. And therefore, Lucas and his sureties ought to have been made co-defendants. And the representative of Lawless should also have been a party, because, if the appellants be entitled to the two slaves bought by Lawless, , . , . , , , ■, , his purchase vested no right, and an unnecessary burtjien should not be imposed by a court of equity on a part of those upon whom a distributive responsibility may resti Though Smith and wife should be made personally liable in the first instance, if they or either of ^em be liable for any thing, yet, as they may be irresponsible, her sureties, if they should be rendered liable, should be relieved, as far as may be proper, by imposing on Lucas and his sureties, and on the representative of Lawless, whatever share of burthen may justly devolve on them, either alone or in common with others.
To a bill by slaves soH bya do weress and her husband — but in which she had no interest as wise, the purcessaiy party "or ils representative if he is dead,
Defect of parties, and preparation, extremely defective; but yet, a3 there is some appearance of equity on the part of some of the complainants’ against some of the def’ts, the •decree dismissing the bill absolutely, is reversed, and cause remanded for leave for further preparation. Costs here divided, except as to one of the appellees, as to whom the dismissal is approved, and who neither pays nor receives costs.
If of the slaves, except those embraced in the first allotment, have been permitted to go to the use of the distributees, there would be no ground for any relief in this case, especially as the facts which have occurred , , . , . . , . , would constitute an insuperable bar m equity to the enforcement of the last allotment, or of any future claim by the widow to other slaves, in lieu of those sold, as belonging to her during her life. But, though it is not certain how this fact stands, the more probable inference is, that the slaves included in the last allotment have never been distributed, or given over to the use of the distributees.
And therefore, vague and indeterminate as the essential facts seem to be, as there is a semblance of equitable claim to some relief in some quarter, we think that, though the bill might properly have been dismissed without prejudice, it was erroneous to dismiss it absolutely.
*85 Wherefore, the decree, as to Miller and his sureties, is affirmed with costs, and reversed as to the other defendants; and the case is remanded for leave to amend, and make other parties, and for such further proceedings as may be proper, consistently with the foregoing opinion. The costs of the reversal to be divided between the appellants and those of the appellees as to whom the decree is reversed.